This next case, today is 415-0291. People v. Beasley, for the appellant is Mr. Saint-Germain. Is that pronounced correctly, sir? Saint-Germain. Pardon? Saint-Germain. Saint-Germain. Thank you. And Ms. McLean, on behalf of the appellee, Mr. Saint-Germain, you may proceed, sir. Thank you, Your Honor. Your Honor, Counsel, and may it please the Court. Counsel. My name is Santos Saint-Germain and I represent Mr. Zebulon Beasley. Beasley was convicted of first-degree murder pursuant to a guilty plea, a negotiated guilty plea by which he was sentenced to 30 years in prison. At sentencing, Beasley was admonished of his right to appeal and of the need to file a motion to withdraw in order to preserve that right. However, no motion to withdraw was filed and no direct appeal was taken. Beasley thus filed a pro se petition for post-conviction relief. At the second stage, his petition alleged that trial counsel was ineffective for failing to preserve his right to an appeal and for advising him to take the guilty plea. The trial court dismissed his petition. Therefore, we ask this Court to reverse and remand for a third stage evidentiary hearing because trial counsel failed to preserve his right to an appeal by not filing a motion to withdraw. Furthermore, trial counsel was ineffective for advising Beasley to take the guilty plea when Beasley had two plausible arguments that he could have presented at trial. To begin, first, trial counsel was ineffective for failing to preserve his right to appeal. Immediately after being admonished, Beasley alleging his post-conviction petition, that immediately after being admonished, he requested that trial counsel file the motion to withdraw. Trial counsel said, and I quote, I will come and visit you in the jail and we will discuss the grounds of the motion. However, trial counsel never came and never discussed the grounds of the motion. Under Flores-Ortega, the defendant has a right to a direct appeal and only the defendant can make the decision to take an appeal or not to take an appeal. Therefore, trial counsel will be deficient if he failed to preserve the right to appeal where either the defendant demonstrated that he was interested in an appeal, or a rational person in the defendant's position would have taken that appeal. In this particular case, by requesting that trial counsel file the motion to withdraw, Beasley did everything that he could have in order to reasonably demonstrate that he was interested in this appeal. Furthermore, prejudice occurs if, in not filing the motion to withdraw, trial counsel denies the defendant the opportunity to present grounds that would have supported such filing of the motion. In this case, Beasley has two plausible grounds that could have been presented in the motion to withdraw. First, he had a plausible affirmative defense of defense of another. And second, he could have argued for a lesser mitigated offense to with second degree murder. As to his plausible defense, the facts of this case is that Beasley fired in defense of his friend, Mr. Scott, who was being attacked by the friend of the victim who had a broach's knife. At the preliminary hearing, the lead detective that investigated the killing testified that there were two witnesses that would have testified that either the victim or the victim's friend had a broach's knife and motioned in a throwing manner or in a charging manner against Mr. Scott. Beasley informed his trial counsel that when he fired the shot, he believed that his friend was at risk and that his friend's life was at risk or in danger of deadly force. In order to present an affirmative defense of defense of another, the defendant may only present slight evidence that deadly force was required to protect a third party person. In this case, there was more than slight evidence that Mr. Scott's life was in danger when Beasley fired at Mr. Freeman. However, if Beasley's belief that he was entitled to the defense of another was imperfect or unreasonable, he could still argue that because he had the subjective belief, given the circumstances, that he could argue for a lesser mitigated offense of second degree murder. When Beasley informed his trial counsel about his plausible defense of either the defense of another or arguing for a lesser mitigated offense, trial counsel told him that he was not entitled to a self-defense. That is incorrect because the facts in this case presented are that Beasley was firing the shots in defense of his friend. So although he asked about self-defense, the facts suggest that he was requesting information on a defense of another. And counsel, in telling him that he was not entitled to an affirmative defense, provided deficient advice. But also, counsel failed to take into account Beasley's subjective belief when counsel told him he was not entitled to jury instruction under lesser mitigated offense of second degree murder. Therefore, counsel was furthermore ineffective for giving him the advice to take the guilty plea. In this case, prejudice is present because Beasley could have presented one of those defense had he decided to go to trial. But even more, Beasley could have argued for a lower sentence if he was presented with the opportunity to argue for the lesser mitigated offense. Therefore, we ask this court to reverse and remand for a third stage evidentiary hearing. If there is no question, your honors. With regard to the withdrawal request, what did the affidavits say about the second degree murder question? The affidavit only said that he asked his counsel whether he was entitled to a lesser mitigated offense. What it says is a lesser included offense. But second degree murder is actually a lesser mitigated offense. And his counsel, the affidavit alleged that his counsel's response was that he could not get a jury instruction under lesser mitigated offense. That is incorrect, your honor. He could have gotten a jury instruction under lesser mitigated offense. Well, he could have asked for one. Yeah, he could have asked for one. Why not get? Well, the standard for getting it is slight evidence. And because of the lesser mitigated offense of second degree murder only requires that under the circumstances, the defendant demonstrate that he believes that the killing was justified. The killing, if that belief is imperfect, even if that belief is imperfect, he is entitled to the jury instructions. Okay, thank you, counsel. Thank you, your honor. We request a reversal for a third stage evidentiary hearing. Thank you. Ms. McClain? May it please the court, counsel? Counsel. The state disagrees with my opposing counsel. The cases interpreting Edwards have recognized the distinction it makes between a first and second stage dismissal of a post-conviction petition. And state that in order to make a substantial showing of the strict limb prejudice prong, defendant must explain the basis on which he could move to withdraw his plea and that there is a reasonable probability that the motion to withdraw a guilty plea would be granted. Defendant did not do that in this case. Defendant must make a substantial showing what justifiable basis he could have moved to withdraw his guilty plea and that there was a reasonable probability that the motion would have been granted, allowing defendant to withdraw his guilty plea. Specifically, defense counsel was correct in advising defendant that self-defense was not available. In addition, defense counsel correctly informed defendant that he was not entitled to a jury instruction in voluntary manslaughter. This is because defendant was the aggressor. So defendant was not legally entitled to either the self-defense or the voluntary manslaughter instructions. Self-defense is not available to a person who provokes the use of force with the intent to use such force as an excuse to inflict bodily harm upon the assailant. In this case, the uncontroverted evidence established that defendant and co-defendant went to the address of the victims to confront Freeman over Freeman's threat to a friend of theirs, which defendant had heard over the telephone. Scott decided to fight Freeman over that threat, and defendant brought along his loaded .38 caliber revolver because Freeman was known to have weapons. Therefore, defendant and Scott instigated the entire incident, and self-defense is not available as a defense. Where is the, what is the factual basis of the information you're arguing to us? I believe it was in the preliminary hearing. It was what? The preliminary hearing. I'm not positive. Regarding this issue, so this was specified through the preliminary hearing that you just said? Go ahead. I cite volume 15. I'm not exactly sure if that's the plea, the factual basis for the plea. I think the preliminary hearing was an earlier volume, so that might be the factual basis for the plea. So these are the representations made by the prosecutor at the time the defendant pled guilty? Yes. Was defense counsel asked if the state has witnesses who called would testify substantially as indicated? I'm sure he was. Was there any dispute made about any of these representations? I don't believe so. In the affidavit in support of the request to withdraw his guilty plea, what factual averments were set forth which are, for lack of a better way to put it, inconsistent with the representations you just made, if any? I don't believe there's anything inconsistent. Well, you heard Mr. Saint-Germain just argue about essentially a self-defense claim could have been made. Your representation suggests that's not something feasible. Is there any basis in the record that you're familiar with which would underlie his claim or support it? Something besides what you just mentioned on the factual basis. I don't think there's anything that disputes the fact the defendant took a gun to confront the defendant. What about the defendant's own affidavit about the circumstances? Did he provide one of those in support of his post-conviction petition? I believe he did supply an affidavit, but I don't believe it disputes the fact that he took the weapon to someone else's house and they were going to confront this man over some threat. So it's your position he initiated these events and therefore a claim of self-defense is not available? Exactly. What about imperfect self-defense as Mr. Saint-Germain argued it, namely the lesser mitigated offense of second-degree murder? How would that work? I think the law holds that voluntary manslaughter is not available if the defendant is the aggressor. So that's our position. He was the aggressor and so self-defense and voluntary manslaughter are not available. We're talking about second-degree murder, not voluntary. Voluntary based on a reasonable belief of need to defend yourself. Or sudden and intense passion would be the other possibility, but it doesn't sound like there would be any of that asserted in this case. I don't believe so. I think also the uncontroverted evidence in this case is at the time the defendant fired the gun, Freeman and Lee were retreating into the house. So that would be another reason that... Uncontroverted evidence that appears where? Um... This one I am citing, I think it might be the preliminary hearing. Volume 3, page 9. Also the physical evidence at the scene corroborates that Detective Atkins' testimony because the victim was found inside the house on the kitchen floor and he had gone through an enclosed porch. And also there were shots, evidence of shots fired right by the door. I guess the door frame maybe. Bullets were recovered from the door frame. So that would be another reason the State would assert that self-defense was not, or voluntary manslaughter were not available. Instead of... You're focusing on information available in the record which presents one side. The question would be, or the question I would have, what is it that defendant would need to have done to get to a third stage? What could defendant affirmatively have done to get to a third stage? In the face of... Or what effort might be made to get to a third stage in the face of the evidence about which I think there's no dispute. Now whether that would be disputed at a trial is different than what's available to us now. I guess, I mean, if his affidavit had said they weren't retreating, or if his affidavit had said he had some kind of innocent reason for bringing a gun to the house, maybe that would have gotten him... Or disputed that he brought the gun to the house. Right, correct. Or even knew that the other guy had a gun. I don't know. Or that had I known that that was available to me, I would have insisted on going to trial rather than engaging in a plea. Was there anything like that that was alleged in an affidavit? He did not, as far as prejudice, he did not allege that he would have gone to trial if he had known about self-defense or voluntary manslaughter. He merely alleged that he was denied the choice, the decision. He was graced his violation of his right to choose whether he didn't say, I would have gone to trial if I'd known. Is that required? Yeah, I believe so. In Hill v. Lockhart, a United States Supreme Court case, defendant failed to allege that had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. And in Rivera, a 2nd District 2014 case, defendant stated he was not given a choice as to whether or not to submit the lesser included offense as a jury instruction by his attorney. The court found this allegation was general and failed to specify that had he been given the choice, he would have decided to submit the instruction. So the court found failure to establish prejudice. So the state would assert that the petition fails on both of those, performance and prejudice. Are there any other questions? The defendant filed an affidavit in support of his post-conviction petition? Yes. And he had counsel at the second stage? Yes. And did the defendant claim that he wanted a trial in his affidavit? I'm not positive. I know he didn't claim he would have wanted a trial based on his misadvice. He did say something to the fact that he felt like he was in a no-win situation, so he pled guilty. I'm not sure if that can be translated into saying that I would have taken a trial. Okay. Thank you, counsel. Mr. St. Germain? A few points in rebuttal. One is the allegation that he made in his affidavit is that the advice he received made him feel as if he was in a no-win situation. Well, pausing right there, maybe that's true. What was that? Maybe that's correct, given the strength of the evidence against him. Well, the evidence against him, from his vantage point, was that he may have had a defense, or at least an imperfect defense. And we disagree with the State's position. Well, that's what I want. I'm glad you mentioned that, because what I'd like you to do is identify what in the record is inconsistent, if anything, with representations that Ms. McClain made. Sure, Your Honor. Sure. The testimony of Detective Atkinson, the lead detective in this case. Detective Atkinson said that he interviewed several witnesses, including taking a testimony statement from the defendant. And his relation, what he said at the preliminary hearing, is that two witnesses could testify that either the victim or the victim's friend had a butcher's knife and was possibly charging the co-defendant, the defendant's, Mr. Beasley's friend. That alone suggests that there was no retreat. If two witnesses can testify that someone was charging at Mr. Scott, then how can there be retreat at the time of the firing? Well, what about the business about initiating the contact and bringing the gun to the confrontation? Sure, Your Honor. The way initiation works in terms of defense of another is who escalated it from deadly force. We do not dispute that Mr. Beasley brought the gun to the scene, but Mr. Beasley fired, used deadly force when he believed deadly force was about to be used. And that's how the affirmative defense of either self-defense or defense of others work. You can have a gun on your possession. That in itself is not instigation. Going to a scene, starting an argument is also not instigation. Instigation is you deny the affirmative defense when you escalate a non-deadly situation into a deadly situation. And in this case, Beasley's statement that he fired at the time that either Mr. Freeman or Mr. Lee was charging at Mr. Scott with the knife suggests that he used deadly force when he believed that deadly force was about to be used. Who has that statement made? That statement was made to Detective Atkinson, and Detective Atkinson related that statement during the preliminary hearing. And the State even conceded in its brief that the defense of another was available to Mr. Beasley because the trial court said it. The trial court, before finding probable cause, said, is there, I quote, is there a defense of another? Maybe. But I find that there is probable cause to file the information. So the issue was introduced. I see that, Mike. No, go ahead. You still have time. The issue was introduced by the trial court, and that's when Beasley was alerted to it, and he questioned his trial attorney about it. Just to conclude, Your Honor, the way Edward works is that the defendant must make a substantial showing that there was some grounds that could have been presented in the motion to withdraw. In this situation, he presented at least two plausible grounds. Opposing counsel suggests that he needed to show that the motion to withdraw, a reasonable probability that the motion to withdraw would have been granted. But the state's side to People v. Orozco, in People v. Orozco, actually the state's side to People v. Gomez, in People v. Gomez, the defendant was never denied his direct appeal. In Gomez, trial counsel filed a motion to reconsider the sentence and not a motion to withdraw. Then it was appealed, the appeal, the conviction was affirmed, and on P.C., the defendant claimed that he should have filed a motion to withdraw. That is an entirely different fact pattern. In this situation, Edwards looked at whether the defendant could have gotten his right to an appeal, and in this particular situation, all he needs to do is give some explanation as to what the grounds would have been in the motion to withdraw and not success on the motion to withdraw. Well, a reasonable probability that the motion would have been granted allowing the defendant to withdraw the guilty plea. Isn't that the standard? That standard was stated in People v. Orozco. But in Orozco, the defendant never claimed that he was denied his right to an appeal. The defendant claimed that he was denied the right to file a motion to withdraw, which is removed from what we are claiming in this situation. Go ahead. In our situation, Mr. Beasley was denied the right to a direct appeal. The only way he could have gotten that right to a direct appeal is by filing the motion to withdraw because his plea was a negotiated plea. In People v. Orozco, the plea was an open plea. Counsel chose one motion over the other. Counsel in Orozco chose to file a motion to reconsider and not a motion to withdraw. The claim of error was entirely different, and because of that, the prejudice, to prove prejudice, the test was different. In our situation, all Beasley needs to show is some ground on which the motion could have filed and not success on the motion. We request that a third-stage evidentiary hearing be granted to Mr. Beasley. Thank you. Thank you, Counsel. Thank this man and the recess group. And your advisement to the recess group.